Jason H. Ehrenberg, Esq.
(Admitted *pro hac vice*)
Holon Law Group LLP
442 5th Ave. Suite 2697
New York, NY 10018
(T) 332-253-4992
(E) jehrenberg@holonlaw.com

*Attorneys for Defendant Lucas Sirois*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>LUCAS SIROIS,<br><br>           Defendant | Case No.: 21-cr-175-LEW |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE**
**TO PREVENT JURY NULLIFICATION ARGUMENTS**

Defendant Lucas Sirois, by and through counsel, submits this Opposition to the Government's Motion in Limine to Preclude Jury Nullification Arguments.

### I. Introduction

The Court should deny the Government's motions in limine seeking (1) a categorical ban on any reference to Maine's marijuana regulatory framework, caregiver status, sales to dispensaries or patients, or Defendants' beliefs and compliance efforts, and (2) a bespoke, front-loaded "anti-nullification" instruction directing jurors not to consider Maine law at all. The Government mislabels core mens rea and context evidence as "nullification," misapplies Fed. R.

Evid. 401–403, and invites reversible error by pre-judging disputed factual themes and restricting confrontation and the right to present a defense.

This Opposition does not contend that state law legalizes federal conduct. It explains why the surrounding regulatory context and Defendants' participation in that context are admissible for non-nullification purposes directly bearing on elements and permissible inferences—intent, knowledge, purpose, absence of concealment, materiality (as to bank fraud), impeachment, and document interpretation—with tailored limiting instructions if necessary.

## II. Procedural Posture

The operative charging instrument is the August 13, 2025 Superseding Indictment alleging, among other counts, violations of 21 U.S.C. §§ 841(a)(1), 846, 856, bank fraud, and conspiracy to defraud the United States and impair the IRS. *See* Superseding Indictment, No. 1:21-cr-00175-LEW (D. Me. Aug. 13, 2025). The Government now seeks to forbid references to Maine's medical-marijuana regime, to Defendants' caregiver status or sales channels, and to Defendants' beliefs and compliance efforts; and to issue, at the start of trial, a directive telling jurors that Maine law is irrelevant and must not be considered.

## III. Argument

### A. Evidence of Maine's regulatory scheme, caregiver status, and Defendants' compliance orientation is admissible for non-nullification purposes under Rules 401–402.

Evidence is relevant if it has any tendency to make a consequential fact more or less probable. Fed. R. Evid. 401; *see* Fed. R. Evid. 402.

Excluding such context wholesale would not only distort the evidentiary picture under Rules 401–403, but would also trench upon the defendant's Sixth Amendment right to present a complete defense and to confront the Government's narrative on intent and purpose.

Agreement and mens rea (§ 846). Whether a defendant knowingly joined a conspiracy "the object of which was to distribute marijuana" is an elements question, not a policy debate. Evidence that Defendants operated within—or believed they operated within—Maine's caregiver program makes it less likely they knowingly entered an agreement to traffic in a "black-market collective," rebuts willful-blindness themes, and supports good-faith.

Purpose and intent (§§ 841, 856). Section 856 requires the Government to prove the premises were used or maintained for the purpose of manufacturing or distributing a controlled substance. 21 U.S.C. § 856(a)(1). Evidence that facilities functioned as licensed caregiver operations serving recorded channels bears directly on purpose, business model, and intent, and rebuts the Government's "black-market" narrative.

Narrative integrity and non-misleading context. Jurors should understand why records, labels, transportation, and cash-handling looked as they did under Maine's then-operative rules. Scrubbing that context risks rendering neutral compliance artifacts deceptively nefarious. *See* Fed. R. Evid. 401 advisory committee's note (1972) (relevance is a "very low" threshold).

Impeachment and agent-methods. Cross-examination into how state rules worked and what witnesses/agents knew (or didn't) is proper to test perceptions, inferences, and investigative choices. *See* Fed. R. Evid. 607–609; Fed. R. Evid. 611(b).

Courts routinely admit state-law context for these limited purposes while precluding any "state law is a defense" argument.

### B. For Count Three (Bank Fraud), marketplace facts, caregiver licensing, and the banks' awareness are central to materiality and intent to defraud.

The Superseding Indictment alleges Mr. Sirois "falsely warranted" on an account-opening document that "no portion of any proceeds deposited to any account I maintain in any capacity … will be derived directly or indirectly from any [marijuana]." Superseding Indictment, at 2. The jury

must assess (1) whether such a representation would be material to the financial institution, and (2) whether Mr. Sirois acted with an intent to deceive. *See Neder v. United States*, 527 U.S. 1, 16 (1999) (materiality is an element of federal fraud offenses).

Evidence that (a) Maine operated a licensing-based, regulated market, and (b) local credit unions widely serviced that market, is probative of both materiality and intent to defraud. The Government's requested blanket exclusion would bar Defendants from presenting a coherent defense to the very count the Government added.

### C. Rule 403 does not support a blanket ban; narrow tailoring and a neutral Rule 105 limiting instruction suffice.

Even if the Court perceives some risk of confusion, exclusion under Rule 403 requires a showing that any unfair prejudice or confusion substantially outweighs probative value. The probative value here is high (mens rea, purpose, materiality, impeachment, narrative integrity). Any risk can be cured with (a) a prohibition on arguing that state law is a complete defense, and (b) a neutral limiting instruction when such evidence is admitted or in the final charge. See Fed. R. Evid. 403, 105.

The Government's reliance on decisions excluding **state-law compliance as a defense** misses the mark. *See, e.g., United States v. Bilodeau*, No. 2:18-cr-00063-GZS, 2022 WL 4940141, at *1 (D. Me. Oct. 4, 2022)* (excluding state-law compliance as a **complete defense** to CSA counts). Those cases do **not** bar admission of state-law context for mens rea, purpose, or credibility. Tailored admission is consistent with both lines of authority and this Circuit's juror-duty precedents. *See United States v. Sepúlveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) (courts may prevent invitations to nullify while still trying the case on admitted evidence).

### D. The prior Rohrabacher–Farr/McIntosh proceedings do not preclude trial-stage admissibility for distinct, elements-bearing purposes.

Rider litigation is an equitable, pretrial spending constraint that placed a **defense burden** to show substantial compliance; it was not an elements determination for this jury. See *United States v. McIntosh*, 833 F.3d 1163, 1172–78 (9th Cir. 2016) (describing rider's scope and burden). A rider ruling neither (a) adjudicates intent/purpose for §§ 841/856 or materiality/intent for bank fraud, nor (b) forecloses cross-examination or explanatory context at trial. Using the rider outcome to block otherwise-admissible intent/purpose/materiality evidence or to instruct jurors that Defendants were "not compliant" would improperly comment on disputed trial themes.

### E. The Government's bespoke anti-nullification instruction is unnecessary, argumentative, and risks reversible error.

Courts may prevent counsel from urging nullification, but they do **not** pre-comment on specific evidence in a way suggesting defense context is categorically irrelevant. The Government's proposed instruction—delivered **before** evidence—tells jurors that compliance evidence "does not make it any more or less likely" Defendants committed the charged crimes. That pre-judges disputed themes (intent, purpose, good faith, investigative context) and risks being understood as a judicial endorsement of the Government's characterization. If the Court believes guidance is warranted, the narrow, neutral approach is a Rule 105 instruction timed to admission or included in the final charge.

### F. A categorical exclusion would impair confrontation and the right to present a defense.

A blanket bar would foreclose cross-examination into the labels the Government intends to press ("illegal collective," "black market"), strip explanatory context for business records and practices, and prevent the jury from hearing state-of-mind evidence. *See* U.S. Const. amend. VI;

*Fed. R. Evid.* 611(b). The Rules do not permit such a sweeping prior restraint on defense proof and cross.

### G. *Bilodeau* is Distinguishable

Different charges and elements. *Bilodeau* focused on CSA counts and granted a broad bar on Maine-law talk to prevent jury-nullification; it expressly treated the MMMP as "at best, marginally relevant" to those CSA issues. Our superseding indictment adds bank-fraud (§1344) and §1014 false-statement counts, where intent to defraud, knowledge, intent to influence, and (for §1344) materiality are elements. Evidence that the bank(s) knew the business was state-licensed, reviewed regulatory/COA files, and priced/underwrote risk accordingly is direct Rule 401 relevance to those elements—not jury-nullification.

*Bilodeau's* holding is issue-specific, not categorical. The court there weighed state-program evidence for CSA mens rea and found the risk of confusion outweighed probative value. It did not decide the admissibility of that same evidence to prove/rebut bank and tax fraud-count intent, knowledge, or materiality. Our use is narrower and tied to different elements.

On Tax. Willfulness in tax crimes makes subjective state-of-mind central. For §§ 7201/7206 counts, the Government must prove a voluntary, intentional violation of a known legal duty. Under *Cheek*, a defendant's actual good-faith belief (even if objectively unreasonable) negates willfulness; the jury may consider reasonableness only as a proxy for sincerity. That makes state-regulatory context and ordinary-course, above-board operations relevant to whether the defendant believed he was following the rules, not to "nullify" the CSA. Put plainly: on the tax counts, mens rea turns on what the defendant thought and why, and the market/regulatory setting is probative of that mental state.

Good-faith reliance on a professional (Ken Allen) is a recognized path to negate willfulness. A defendant may show good-faith reliance on a qualified tax professional where (i) he fully disclosed material facts; (ii) he sought and received advice on the specific tax treatment; and (iii) he actually relied in good faith. Our case squarely presents that theory: Allen held IRS Enrolled Agent status and an MST, marketed professional tax services, and prepared/oversaw filings. Evidence that we hired an IRS-credentialed professional, sent him source data, and filed per his direction is classic Cheek-consistent proof that willfulness is lacking. The Government can cross on the quality of his advice, but it cannot exclude the reliance story without crippling a lawful defense.

State licensing/market transparency rebut "willful blindness" and "concealment." If the Government pursues a willful-blindness or "scheme to hide" narrative, open, licensed operations (inspections, permits, COAs, bank KYC/onboarding, regular payroll/withholding, outside accountant involvement) cut directly against deliberate ignorance and concealment. That is Rule 401 relevance to willfulness—not jury-nullification.

*Bilodeau's* CSA ruling doesn't control the tax counts. *Bilodeau* excluded Maine-law talk to prevent CSA nullification. The tax counts ask a different legal question (willfulness under Title 26), where subjective belief and reliance are elements-adjacent. Our use of licensing/marketplace evidence is narrow and element-tethered: it shows what the defendant believed, what he told his tax professional, and how transparently he operated—not that state law "legalizes" conduct under the CSA. Maine's cannabis regulatory scheme also directly relates to what deductions and movements Defendant and his accountant were legally permitted to utilize without running afoul of federal tax laws.

Procedural posture. *Bilodeau* had already resolved the appropriations-rider issue pretrial and then fenced off MMMP proof as marginal to the remaining CSA elements. Here, the Government's own theories on the non-CSA counts put what the banks and accountants were told and knew squarely in play; excluding that context would misstate the transactional reality those counts require the jury to evaluate. Certainly, Defendant may offer state-regulatory documents (licenses, inspection/permit files, COAs) to show (a) what was disclosed to and known by the banks/processors, (b) the transparency of operations, and (c) why alleged statements were not knowingly false and not intended to deceive—and, for §1344, why any alleged misstatement was not material. Unlike *Bilodeau's* CSA focus, here the probative value with respect to the banking and tax issues is high (it goes to intent/knowledge/materiality/legality of tax deductions), and any confusion can be minimized by a contemporaneous limiting instruction.

Rule 106 completeness. If the Government offers bank forms/emails but seeks to excise text showing the bank's awareness of the state-licensed operations of the businesses at issue, the jury will get a distorted picture. Rule 106 supports admitting the contextual portions to prevent misleading impressions. *Bilodeau* bars using Maine's marijuana regime to excuse CSA conduct or to invite policy-based nullification. We do neither. Our evidence is offered only to prove or rebut elements unique to the fraud counts—what was told to banks, what banks understood, whether statements were knowingly false, whether the scheme intended deception, and, for §1344, whether any alleged misstatement was material. That is classic Rule 401 relevance with a straightforward Rule 105 guardrail; it is precisely not the use rejected in *Bilodeau*.

### H.  Proposed Limiting Instruction (if the Court deems one necessary)

Instruction (Rule 105 – Limited Purpose of State-Regulatory Evidence).  State law does not provide a legal defense to the federal controlled substances charges. You may consider any

admitted evidence about the surrounding regulatory context only for limited purposes—such as evaluating intent, knowledge, purpose, materiality, the meaning of documents, or witness credibility—and not to decide what federal law should be. This language avoids inviting nullification while preserving the jury's function over properly admitted evidence.

## IV. Conclusion – Requested Relief

The Court should **deny** the Government's motion in full. In the alternative, if any limits are imposed, they should be narrowly drawn: (1) to preclude only argument that state law is a complete legal defense to federal controlled substances charges; (2) permit evidence and cross-examination about Maine's regulatory framework, caregiver status, sales channels, communications with regulators, and Defendants' beliefs/efforts for the limited purposes of intent, knowledge, purpose, materiality, context, and impeachment; and (3) if an instruction is given, use a neutral limiting instruction as above, timed with the evidence or in the final charge, not a front-loaded, argumentative directive.

Dated: October 31, 2025 　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　**HOLON LAW PARTNERS LLP**

　　　　　　　　　　　　　　　　　　　　*//s// Jason H. Ehrenberg*
　　　　　　　　　　　　　　　　　　　　Jason H. Ehrenberg, Esq.
　　　　　　　　　　　　　　　　　　　　(Admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Eric Postow
　　　　　　　　　　　　　　　　　　　　(Admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　442 5th Ave. Suite 2697
　　　　　　　　　　　　　　　　　　　　New York, NY 10018
　　　　　　　　　　　　　　　　　　　　(T) 332-253-4992
　　　　　　　　　　　　　　　　　　　　(E) jehrenberg@holonlaw.com
　　　　　　　　　　　　　　　　　　　　www.holonlaw.com

　　　　　　　　　　　　　　　　　　　　and

*//s// Mark Dion*
Mark Dion, Esq.
Fredette Dion LLC
254 Commercial Street
Portland, Maine  04101
Tel: (207)318-1004
dionmark@me.com

**Attorneys for Defendant Lucas Sirois**

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 31, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notice to counsel for all individuals and entities who have entered appearances in this case pursuant to the Court's ECF system, including:

    *//s// Jason H. Ehrenberg*
    Jason H. Ehrenberg