UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:21-cr-00175-LEW |
| | ) | |
| LUCAS SIROIS, et al., | ) | |
| | ) | |
| Defendants | ) | |

## ORDER ON MOTIONS IN LIMINE

Before the Court are the parties' motions *in limine*. For reasons discussed below, the Government's Motion to Prevent Arguments Related to Jury Nullification (ECF No. 618) is GRANTED IN PART and DENIED IN PART, as outlined in this Order. Defendant Lucas Sirois' Motion to Exclude Expert Testimony (ECF No. 641) is DENIED without prejudice. I RESERVE ruling on all other pending motions *in limine* (ECF Nos. 614, 634, and 639).

### DISCUSSION

**I. The Government's Motions**

The Government has moved *in limine* to preclude (1) evidence and argument it contends will invite jury nullification (ECF No. 618), and (2) expert opinion testimony challenging certain Drug Enforcement Agency (DEA) lab protocols used in this case (ECF No. 614). In addition, the Government has also moved to introduce evidence of a prior conviction of Defendant Robert Sirois' under Rule 404(b) of the Federal Rules of Evidence (ECF No. 634). I take each motion in turn.

1

### A. Arguments Relating to Jury Nullification

The Government has moved to preclude Defendants from offering evidence or eliciting testimony about:

> Maine laws regarding medical marijuana, the "medical necessity" of marijuana, the possible legalization of marijuana, the defendants' status as medical marijuana caregivers, sales to legitimate medical marijuana dispensaries, other marijuana wholesalers or patients, and the defendants' beliefs about Maine's marijuana laws.

Gov't Mot. to Prevent Jury Nullification at 1 (ECF No. 618). The Government argues that this evidence is irrelevant, poses a substantial risk of confusing the issues and misleading the jury, and invites jury nullification. The Government also requests that the jury be instructed as to the irrelevance of the Defendants' compliance or noncompliance with Maine law at the beginning of trial. *See* Gov't Mot. to Prevent Jury Nullification at 1, 8.

Evidence is relevant if it has "any tendency" to make a "fact of consequence in determining the action" "more or less probable," Fed. R. Evid. 401, and evidence that is not relevant is not admissible. Fed. R. Evid. 402. Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[A]lthough jurors possess the raw power to set an accused free for any reason or for no reason . . . neither the court nor counsel should encourage jurors to exercise this power." *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993). When the probative value of evidence is substantially outweighed by the danger it will entice the jury to reach a decision for improper reasons by inviting nullification, its exclusion from trial is

appropriate. *See United States v. Florentino-Rosario*, 459 F. Supp. 3d 345, 366 (D.P.R. 2020); *United States v. Luke*, No. 21-cr-00011, 2023 WL 8469771, at *2 (D.V.I. Dec. 7, 2023).

I agree with the Government that the regulatory and legal landscape that governed the distribution and use of medical marijuana in Maine between 2016 and 2020 has only marginal relevance to the charged offenses, if any. *See United States v. Bilodeau*, No. 2022 WL 4940141, *1 (D. Me. Oct. 4, 2022) ("[E]vidence that a particular state has legalized medical marijuana or created a regulated marijuana market is irrelevant to whether the Government can prove a defendant violated *federal* drug laws prohibiting the possession and distribution of marijuana.") (original emphasis) (collecting cases). Evidence of compliance with state marijuana laws does not negate the *mens rea* required under the Controlled Substances Act for the offenses with which Defendants have been charged. *See* 21 U.S.C. §§ 841, 846, 856; *Bilodeau* at *1 (concluding that "evidence seeking to establish that Defendant registered and attempted to comply with Maine's medical marijuana regulations does not negate his mens rea" with respect to charges of conspiracy to distribute marijuana, manufacturing marijuana, and possession with intent to distribute); *United States v. Walsh*, 654 Fed. App'x 689, 696 (6th Cir. 2016); *United States v. Haymon*, No. 20-4438, 2021 WL 4495813, at *1 (4th Cir. Oct. 1, 2021); *Luke*, at *3. And lengthy testimony on the minutiae of a complex regulatory regime and the extent to which Defendants complied or failed to comply with its requirements, when those issues have little to no relevance to the charges at hand, would waste time and confuse and mislead the jury.

Of course, I am aware that the Controlled Substances Act offenses are not the only ones charged,[1] and that the Maine regulatory landscape is, to some extent, inescapably enmeshed with the facts of this case. Some "narrow and elements-tethered" (Response by Lucas Sirois at 7) discussion of Maine's regulations may be unavoidable. But I will not entertain a trial within a trial about the Defendants' compliance with Maine medical marijuana regulations, when that issue has already been litigated before two courts, who both decided that Defendants did not demonstrate compliance sufficient to enjoin the prosecution of this case. *See* Order on Defendants' Motion to Enjoin Prosecution (ECF No. 455); *United States v. Sirois*, 119 F.4th 143 (1st Cir. 2024). If the parties do decide to pursue examination on the subject of Maine law or related topics, they will request a sidebar prior to doing so, so that I may rule on any objections to the proposed line of questioning beforehand. *See Bilodeau* at *2.

I am also persuaded that it is appropriate in this case to preliminarily instruct the jury that while they may hear testimony about Maine's laws and regulation of marijuana, compliance with those laws and regulations is not a defense to the federal crimes of distributing marijuana, possessing marijuana with the intent to distribute it, or conspiring

---

[1] With respect to Count Three of the Superseding Indictment, charging Defendant Lucas Sirois with bank fraud, the Defendant has indicated that he expects to argue (1) that the representation that he would not deposit proceeds "derived directly or indirectly from any Marijuana-Related Business" was not material to the financial institution because local credit unions widely serviced Maine's medical marijuana market, and (2) that he did not act with intent to deceive. Response by Lucas Sirois at 3-4 (ECF No. 644); *See United States v. Santos*, No. 18-cr-585, 2022 WL 1698171, at *4 (D.N.J. Mar. 22, 2022) ("[B]ecause materiality focuses on objective industry practices, evidence tending to [prove or] disprove a prevailing market practice is relevant to what a reasonable [financial institution employee] might find material."). With respect to Counts Four and Five, charging Defendant Lucas Sirois with conspiring to impair the I.R.S. and tax evasion, the Defendant suggests that Maine's regulations are implicated in the tax advice he received, and as a result may be implicated in a defense that followed that advice in good faith. Response by Lucas Sirois at 6-7.

to do so. I anticipate further instructing the jury that this evidence may be considered for the limited purpose of evaluating Defendant Lucas Sirois' mental state with respect to Counts Three, Four, and Five of the Superseding Indictment, though not necessarily as part of a preliminary instruction.

### B. Expert Testimony Challenging the DEA Marijuana Testing Protocol

The Government also moves to preclude Defendants from introducing expert opinions challenging the DEA laboratory's protocols for testing marijuana. Gov't Mot. to Preclude Expert Testimony (ECF No. 614). By way of background, the Government explains that 2,994 marijuana plants were seized from Defendants' facilities in July 2020, and DEA agents collected representative samples that were stored in the DEA facility until they were tested in August 2020 to determine whether the material seized was marijuana. *Id*. at 1-2. Defendant Lucas Sirois has engaged an expert, Mark Scialdone, Ph.D., to opine on the adequacy of these testing procedures. *See* Corrected Designation of Expert Witnesses (ECF No. 587); Supplemental Expert Disclosure and Report (ECF No. 658). The Government argues that Dr. Scialdone's "observations" about the DEA's testing procedures "are generally accurate," but "altogether irrelevant to the ultimate question of whether the trio of tests utilized by the DEA laboratory is effective at distinguishing illegal marijuana from legal hemp,"[2] and requests the exclusion of this testimony under Rules 702, 402 and 403 of the Federal Rules of Evidence. Gov't Mot. to Preclude Expert

---

[2] The 2018 Farm Bill exempted hemp from the legal definition of marijuana under the Controlled Substances Act. *See* 21 U.S.C. §§ 802(16)(B), 812(c)(17). Hemp is defined as any part of the cannabis plant or its derivatives "with a delta-9 tetrahydrocannabinol [delta-9 THC] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1).

5

Testimony at 3-4.  Defendant Lucas Sirois, on the other hand, argues that the Government has to prove that the materials it seized were marijuana and not hemp, and that Dr. Scialdone would "provide his scientific opinion on whether the materials seized in this case were illegal marijuana or legal hemp as defined by the CSA," the scientific reliability of the lab results, and the "inadequacy" of the DEA's procedures.  Response by Lucas Sirois at 2-3 (ECF No. 619).

Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), impose a "heightened" relevance requirement for expert testimony.[3]  *United States v. Hernandez-De La Rosa*, 606 F. Supp. 2d 175, 185 (D.P.R. 2009).  "[E]xpert testimony must be relevant not only in the sense that all evidence must be relevant . . . but also in the incremental sense that the expert's opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue."  *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998).

Because I am not presently convinced that the proffered expert testimony fails this standard entirely, I will reserve ruling on the Government's request, although with the following guidance for counsel regarding where I am likely to draw the line as to the scope of testimony I will allow.  The Government acknowledges that it must prove that the material seized was marijuana, *i.e.* cannabis with a delta-9 THC concentration *greater than* 0.3 percent on a dry weight basis.  *See* 21 U.S.C. § 802(16)(B), 7 U.S.C. § 1639o(1).  But

---

[3] The Government has not challenged Dr. Scialdone's qualifications or the reliability of his data and methods—only the relevance of his opinions.

the Government does not need to prove the precise delta-9 THC concentration, as long as it proves beyond a reasonable doubt that the concentration is above 0.3 percent. *Id*. To the extent Dr. Scialdone will opine that the Government's procedures do not reliably determine whether the material seized had a delta-9 THC concentration *greater than* 0.3 percent on a dry weight basis, that testimony is relevant under Rule 702. The Government may have good reasons to disagree with Dr. Scialdone's assessment of its testing procedures, but "[v]igorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Campos v. Safety-Kleen Sys., Inc.*, 98 F. Supp. 3d 372, 378 (D.P.R. 2015) (citing *Daubert*, 509 U.S. at 596). That said, to the extent that Dr. Scialdone intends to testify that the law requires the Government to perform particular tests (*i.e.*, quantitative analysis) or to prove each sample's actual delta-9 THC concentration on a dry weight basis (as opposed to proof that such concentration *exceeds 0.3 percent*), that opinion would be inaccurate and misleading therefore unlikely to be allowed.[4] *See, e.g.*, Supp. Rep. at 11-

---

[4] Contrary to what Dr. Scialdone argues in his opinion, the Controlled Substances Act (as amended by the 2018 Farm Bill) does not require the Government to make a "quantitative" determination of a sample's delta-9 THC concentration. Dr. Scialdone appears to ground his view that "quantitative" testing is required in his reading of Department of Agriculture regulations governing domestic hemp production programs, which provide that "[w]hen a laboratory tests a sample, it must report the tetrahydrocannabinol content concentration level on a dry weight basis and the measurement of uncertainty" in order to determine whether the sample is "within the acceptable hemp THC level for the purpose of plan compliance." 7 C.F.R. 990.1. That regulation further provides, however, that "[t]his definition of 'acceptable hemp THC level' affects neither the statutory definition of hemp, 7 U.S.C. § 1639o(1), in the 2018 Farm Bill nor the definition of 'marihuana,' 21 U.S.C. § 802(16), in the CSA." *Id*. There is no reason to believe that testing requirements from these Department of Agriculture regulations have any bearing upon what the Government must prove and how for purposes of criminal prosecutions under the Controlled Substances Act, and Dr. Scialdone will not be allowed to tell the jury otherwise. Indeed, the DEA has good reasons for implementing more efficient "qualitative" testing procedures, instead of the more rigorous, "quantitative" testing the Defendant and the Defendant's expert argue should have been performed. *See* Gov't Mot. to Preclude Expert Testimony at 5 n.1 ("The expectation to perform a full quantitative analysis on all seized marijuana samples throughout the U.S. is unreasonable and unachievable given current resource constraints" and "would place an

13 ("The definition of hemp in the 2018 Farm Bill calls for a quantitative determination of [delta-9 THC] concentration of less than 0.3% on a dry weight basis.") ("The law requires a **quantitative method** for the determination of [delta-9 THC] concentration on a dry weight basis.") (original emphasis).

Moreover, Dr. Scialdone will not be allowed to opine about the burden of proof in this case; that is, what is or is not sufficient proof beyond a reasonable doubt. *See, e.g., id*. ("The current test data being used by the prosecution in this case is all **qualitative** and *doesn't meet the burden of proof required, creating a reasonable doubt*.") (original emphasis). While an expert's opinion is "not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), the First Circuit has cautioned that "[e]xpert testimony on questions of law is 'rarely admissible' because such testimony 'cannot properly assist the trier of fact.'" *In re Zofran (Ondansetron) Products Liability Litig.*, 57 F.4th 327, 340 (1st Cir. 2023); *see also Stafford v. CSL Plasma, Inc.*, 504 F. Supp. 3d 9, 12 (D.R.I. 2020) ("[W]hile an expert cannot offer a legal opinion about the law, an expert may offer an opinion on disputed facts based on the expert's specialized knowledge."); *Perez-Garcia v. Puerto Rico Ports Authority*, 873 F. Supp. 2d 435, 441-42 (D.P.R. 2012) ("[A]n expert is not given 'carte blanche' to substitute his own views on matters for the jury . . . Opinions that merely tell the jury what result to reach should be deemed inadmissible under Rules 701, 702, and 403.").

unprecedented burden on forensic laboratories already grappling with limited resources.") (quoting Ya-Chih Cheng & Sarah Kerrigan, *Differentiation of Hemp From Marijuana Using a Qualitative Decision-Point Assay*, Forensic Chem. 37 (2004)).

### C. Rule 404(b) Evidence

Lastly, the Government moves *in limine* to introduce at trial documentary evidence of Robert Sirois's 2010 conviction for felony trafficking and cultivation of marijuana in violation of Maine law. In the Government's view, the evidence is admissible for the limited purpose of "establishing Robert Sirois's intent to cultivate and distribute marijuana, his knowledge of marijuana cultivation and distribution, as well as absence of mistake and/or lack of accident" in connection with the offenses charged in the superseding indictment. Gov't Rule 404 Mot. at 2 (ECF No. 634). According to the Government, the evidence of the prior conviction is "particularly relevant" because Robert Sirois contends in his defense that the flower, plants, etc., seized by the Government in this case were hemp rather than marijuana subject to the Controlled Substances Act. *Id.*

Robert Sirois opposes the Motion and argues that the age of the conviction weighs against admission; the evidence lacks "special relevance"; the evidence is clearly going to be viewed improperly by the jury as propensity evidence, since it does not move the needle on other issues; that state trafficking law and federal law have "little similarity"; and that the risk of unfair prejudice exceeds the value of using the evidence for some other supposed purpose. Response at 1-2 (ECF No. 659).

The Rules of Evidence prohibit the admission at trial, for a given offense, evidence "of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But Rule 404 permits the admission of such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).[5] The Government's proposal "to introduce evidence of a defendant's prior criminal conduct is subject to a two-part test." *United States v. Henry*, 848 F.3d 1, 8 (1st Cir. 2017). First, the proffered evidence must have "a 'special' relevance, *i.e.*, a non-propensity relevance" to one of the purposes enumerated in Rule 404(b)(2). *Id*. Second, the proffered evidence must be admissible under Rule 403: its probative value must not be "substantially outweighed" by a danger of unfair prejudice to the Defendant. *Id*.; Fed. R. Evid. 403.

I reserve ruling on the Government's Motion. However, I have significant reservations about the admissibility of the 2010 conviction at this time. If it turns out at trial that there is no serious dispute on the issues of intent and knowledge in this regard (or some supposed mistake), then the lack of a dispute would weigh against admitting the evidence under Rule 403. *United States v. Varoudakis*, 233 F.3d 113, 123-24 (1st Cir. 2000); *see also United States v. Lynn*, 856 F.2d 430, 437 n.15 ("While we do not undermine the government's substantial burden of proof, we do note that in this instance, 'intent, while technically at issue, [was] not really in dispute,' greatly reducing any need for the jury to know of the previous conviction.") (footnote omitted). Under the circumstances, it is better to await Robert Sirois's presentation of his defense before ruling on the Government's need

---

[5] Rule 404 also requires the Government to provide reasonable notice to the defendant that it intends to offer evidence subject to Rule 404 in advance of its production "so that the defendant has a fair opportunity to meet it," including by articulating the use that the Government believes is permitted by the Rule and reasoning that supports its position. Fed. R. Evid. 404(b)(3). The Government's motion satisfies these requirements.

10

for the evidence for a permitted purpose. At present, I remain skeptical that its admissibility would be reasonable.

## II. Defendants' Motions

Defendant Lucas Sirois has filed two motions *in limine*, seeking to exclude (1) references to "black market" or "illicit" marijuana transactions (ECF No. 639), and (2) expert opinion testimony from the Government's DEA lab witnesses (ECF No. 641).

### A. "Black Market" References and Evidence

Defendant Lucas Sirois seeks to preclude the Government from (1) "referring to any marijuana or cannabis-related activity as 'black-market,' 'illicit,'" or with similar terms (including "non-licensed" or "unregulated") or (2) introducing evidence "related to any alleged, uncharged 'black market' or 'illicit' sales/transactions" under Rules 401, 402, and 403 of the Federal Rules of Evidence. Def. Mot. to Exclude "Black Market" References at 1 (ECF No. 639). The Government responds that, if its Motion to Prevent Jury Nullification is granted, it will have no need to characterize Defendants' conduct under those laws; but if that motion is denied, it "will be compelled to call witnesses who will describe the then-existing legal landscape in Maine, the requirements of state laws then in force, and why the defendants' conduct went far afield of Maine's then-existing state laws." Response at 2 (ECF No. 654).

In light of my Order on the Government's Motion to Prevent Jury Nullification above, my expectation is that the Government will abstain from characterizing the status of Defendants' conduct under Maine law. That said, if Defendants open the door to such evidence at trial by suggesting that they did comply with Maine's regulatory requirements,

11

and in some measure it may be inescapable that such evidence will waft about the courtroom, the Government will be entitled to counter that suggestion with evidence of its own. I therefore reserve final ruling on this request for trial.

### B. Expert Testimony from DEA Witnesses

Finally, Defendant Lucas Sirois seeks to preclude the Government's DEA lab witnesses from offering opinion testimony about (1) whether the substance at issue was marijuana or hemp and (2) whether the DEA's standard testing protocols are scientifically reliable under Rules 403, 702, and 703 of the Federal Rules of Evidence, as interpreted in *Daubert* and subsequent cases.[6] Def. Mot. to Exclude Expert Testimony at 1 (ECF No. 641). Defendant argues that these DEA witnesses "are not qualified as experts in the fields necessary to provide the scientific testimony the prosecution plans to elicit." *Id*. at 3-4. Specifically, Defendant argues that DEA chemists are unqualified because they are not trained in the fields of "botany, plant genetics, or cannabinoid chemistry." *Id*. at 4-5. In addition, Defendant argues that the DEA's cannabis identification procedures are inadequate to distinguish hemp from marijuana, because "[t]he relevant question—THC concentration—requires validated quantitative cannabinoid analysis, not qualitative

---

[6] Lucas Sirois also maintains that these witnesses were not timely disclosed, as Rule 16(a)(1)(G) requires, *see* Fed. R. Crim. P. 16(a)(1)(G)(ii), but does not appear to argue for the exclusion of their testimony on those grounds. Def. Mot. to Exclude Expert Testimony at 3. Even if the Government's disclosures were untimely, that fact alone would not necessarily require the exclusion of the Government's expert witnesses at trial. *See United States v. Tanguay*, 895 F. Supp. 2d 284, 289-90 (D.N.H. 2012) (district courts have "'broad discretion in handling non-compliance' with criminal discovery obligations, with the remedy to 'vary in proportion to the seriousness of the violation and the amount of prejudice claimed by the defendant.'") (quoting *United States v. Osorio*, 929 F.2d 753, 762 (1st Cir. 1991)); *see also United States v. Santiago*, 62 F.4th 639, 651 (1st Cir. 2023) (requiring a showing from the defendant as to "how the allegedly late disclosure was prejudicial"). In any event, I find no prejudice in the timing of the Government's disclosures.

identification." *Id*.

In response, the Government argues that "the DEA's testing approach is designed to—and does—determine whether the concentration of [delta-9 THC] in a given sample of cannabis is more than, or less than, one percent," and that the Government is not required to prove the exact concentration. Gov't Response at 1 (ECF No. 655). The Government further argues that its proposed witnesses are "experts in seized drug analysis" and "recipients of substantial and on-going training in forensic chemistry technologies and methodologies." *Id*. at 2.

"*Daubert* establishes that before admitting expert testimony, the trial court must fulfill its 'gatekeeping role' by making an independent determination that the expert's proffered . . . knowledge is both reliable and relevant.'" *United States v. Crater*, 93 F.4th 581, 590 (1st Cir. 2024). "There are four factors that may assist a trial court in determining the admissibility of an expert's testimony: (1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." *Campos v. Safety-Kleen Sys., Inc.*, 98 F. Supp. 3d 372, 378 (D.P.R. 2015) (citing *United States v. Mooney*, 315 F.3d 54, 62 (1st Cir. 2002)). "These factors do not constitute a definitive checklist or test." *Id*. (citing *Milward v. Acuity Specialty Prod. Group, Inc.*, 639 F.3d 11, 14 (1st Cir. 2011)). The Government explains that the DEA lab used "a two-step technique involving gas chromatography and mass spectrometry to compare the abundance of [delta-9 THC] in a sample of cannabis against an internal standard," through which "the chemist can

13

definitively determine whether the [delta-9 THC] concentration in the sample is greater than or less than one percent."[7] Gov't Response at 4; *see also* Gov't Mot. to Preclude Expert Testimony at 6-9 (describing protocol). The Government concedes that this procedure is not "state of the art," *id*., and has not been peer-reviewed, *see* Gov't Mot. to Preclude Expert Testimony at 3, but it has been validated by the DEA and appears to be accepted within the discipline of forensic drug analysis. *Id*. at 14; *see also* Office of Forensic Sciences Qualitative Separation Method Validation Final Report, Exhibit 3 (ECF No. 614-3). I am satisfied that the Government has made the showing of reliability that Rule 702 and *Daubert* require. And again, Defendants remain free to attack the efficacy and reliability of DEA testing protocols through "[v]igorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof." *Campos v. Safety-Kleen Sys., Inc.*, 98 F. Supp. 3d 372, 378 (D.P.R. 2015) (citing *Daubert*, 509 U.S. at 596).

"As part of its inquiry, the trial court must determine whether the putative expert is qualified by knowledge skill, experience, training, or education to offer testimony." *Pages-Ramirez v. Ramirez Gonzalez*, 605 F.3d 109, 114 (1st Cir. 2010) (cleaned up). The Government has represented that it will be able to show that each of its proposed experts have degrees in chemistry and/or forensic science and relevant work experience and training in seized drug analysis and identification through the DEA. *See* Gov't Response

---

[7] As discussed above, nothing in the Controlled Substances Act (as amended by the 2018 Farm Bill) requires the Government to prove the exact THC concentration of its sample, if it can show that sample's delta-9 THC concentration exceeded 0.3% on a dry weight basis. *See* 21 U.S.C. § 802(16)(B); 7 U.S.C. § 1639o(1).

at 2. The Government has also indicated that two of these witnesses have specialized training in quality assurance and are involved in the approval of the DEA lab's testing protocols, including the protocols at issue in this case. *Id*. at 2-3. I am not persuaded that the DEA witnesses' lack of credentials in "plant genetics" and "cannabinoid chemistry" precludes them from testifying about the reliability and efficacy of tests they administer to identify seized material as illegal marijuana, in light of their other training and qualifications. *Cf. Pages-Ramirez*, 605 F.3d at 114 ("[A] proffered expert physician need not be a specialist in a particular medical discipline to render expert testimony related to that discipline. . . . Indeed, we have noted that it would be an abuse of discretion to exclude testimony that would otherwise 'assist the trier better to understand a fact in issue,' simply because the expert does not have the specialization that the court considers most appropriate.") (citing *Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion*, 345 F.3d 15, 24 (1st Cir. 2003)). To the extent Defendants believe that bringing to the jury's attention resume deficits in plant genetics and cannabinoid chemistry will undermine witness credibility, that strikes me as garden variety grist for the cross examination grinder, not a matter of admissibility.

    I will not determine the admissibility of any of the Government's expert opinions until the Government seeks the qualification of its experts as such at trial or such qualification comes by way of stipulation. But I am not persuaded that Rule 702 or *Daubert* require the exclusion of these witnesses or their opinions at this stage. As a result, the Defendant's Motion is denied without prejudice.

## CONCLUSION

For the foregoing reasons, the Government's Motion to Prevent Arguments Related to Jury Nullification (ECF No. 618) is GRANTED IN PART and DENIED IN PART, as outlined in this Order. Defendant Lucas Sirois' Motion to Exclude Expert Testimony (ECF No. 641) is DENIED without prejudice. The other pending motions *in limine* (ECF Nos. 614, 634, and 639) are RESERVED for trial.

SO ORDERED.

Dated this 7th day of November, 2025.

                                              /s/ Lance E. Walker
                                              Chief U.S. District Judge