UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:21-cr-00175-LEW |
| | ) | |
| LUCAS SIROIS, *et al.* | ) | |
| | ) | |
| Defendants | ) | |

**ORDER ON MOTION FOR LEAVE**

Defendant Lucas Sirois requests leave to file a motion for new trial. Corrected Motion for Leave (ECF No. 831). The Defendant seeks leave rather than simply filing his motion because the motion itself is over 80 pages long and this District's Local Rule 147(d) sets a more modest page limit, "except by prior leave of Court." The Defendant also seeks leave to present his counsel's proposed declaration, another 101 pages, which works in tandem with the 83-page motion by reporting on and critiquing in argumentative fashion the contents of some 27 exhibits.[1] Corrected Ehrenberg Decl. (ECF No. 831-2). According to the Defendant, his latest attempt to overturn his nearly year-old conviction is based on the discovery of new evidence and is therefore timely under Fed. R. Crim. P. 33(b)(1).

[1] In a preliminary statement, the declaration states: "This declaration is submitted so that the memorandum of law filed with it may address the legal questions this motion presents without reciting at length the contents of the instruments on which those questions turn." Corrected Decl. of Jason Ehrenberg at 6. In effect, the Defendant's Motion for Leave asks the Court to authorize and, implicitly, to have the Government respond to, a motion that approaches 200 pages in length.

The proposed filings are clearly[2] not the work of an organic mind with linguistic talents developed in the crucible of human experience. It is obvious that the entity that drafted them has an artificial intellect that is unconcerned with, for instance, getting to the point. To comment on the filings at length would only serve to reward them. Still, I offer some particularly glaring artificial ticks that are a complete waste of the reader's time. Throughout the motion, the author has taken special care to tell the Court what it is NOT arguing or suggesting. For instance:

> "Defendant does not ask the Court to accept any of that . . ., and does not ask it to revisit . . . ."
>
> "Defendant does not read that order as . . . ."
>
> "Defendant does not ask the Court to decide . . . ."
>
> "Defendant does not press a claim that . . . ."
>
> "Defendant does not ask the Court to . . . ."
>
> "Defendant does not offer that as an excuse for anything, and it is not one . . . ."
>
> "Defendant does not assume what the Court would have done . . . ."
>
> "Defendant does not contend that . . . ."
>
> "Defendant does not ask the Court to . . . ."
>
> "Defendant does not characterize . . . ."

These ten excerpts are drawn from the first 26 pages alone. Many, many more such empty statements follow. There are equally unproductive positive descriptions of what the

---

[2] Even if my supposition is inaccurate, for all the reasons set out in this Order I would nevertheless exercise my discretion by denying the Motion for Leave given the unreasonable length of the proposed filings and the marked deviation from customary practice discussed in note 3, below.

Defendant purports to do with the motion, as though it were necessary to narrate the action rather than simply present the argument. For example:

> "Defendant states candidly that the first proposition is . . . ."
>
> "Defendant states at the outset of that Part, as he does here, that the Court need not reach these findings . . . ."
>
> "Defendant states plainly how . . . ."
>
> "Three things follow from that exchange, and Defendant states each rather than resting on the first."
>
> "Defendant states his position on the four-part test candidly . . . ."
>
> "Defendant states the limits of that argument plainly . . . ."
>
> "Defendant states the frame precisely . . . ."
>
> "Defendant states the case because it is the government's answer as much as his own."
>
> "Defendant states the posture of that case rather than leaving the government to state it: . . . ."
>
> "Defendant states as much rather than leaving the government to state it."

So on and so forth for the next 50 pages.

Although counsel is free to employ generative artificial intelligence ("AI") to assist with the production of motions and other appropriate papers, the Court expects that counsel will distill the resulting artifacts to their essence in order to present filings that are accurate and concise and in keeping with ordinary practice.[3] To be sure, this case has been

[3] The proposed affidavit does not gibe with ordinary practice. The filing purports to encapsulate, indeed supplant, the relevant record and it is, moreover, replete with additional argumentation, such that the Defendant really should have sought leave to file a 184-page motion. Parties and their counsel are expected to cite and supply the actual record rather than reconstitute or reformulate it with the aid of generative AI. Consider the judicial resources required to comb through a declaration that purports to reproduce the entire record. The Court must of necessity compare the declaration to the actual record, since it cannot simply presume that every representation is accurate. That cannot be countenanced. The Court strongly doubts

noteworthy in its procedural complexity, but the gist of the Defendant's proposed motion appears to be capable of a much more direct statement, involving, as represented in the Defendant's Reply at 2 (ECF No. 837), "newly discovered evidence bearing on suppression. I cannot imagine why, if the proposed motion requires somewhere between 80 and 200 pages, virtually every motion to suppress or motion for new trial filed on this Court's docket would not call for similarly burdensome filings.

If every exhibit must be scanned and uploaded for critical commentary by AI, so be it, but counsel may not supplant the record with an artificial facsimile and force the consumption of AI circumlocutions without end. If these sorts of filings pass muster here then they must pass muster in every other case. That development would mark the end of human-centered jurisprudence because it will prove necessary for judges and their staff to outsource their own duties to an AI tool. In short, the Defendant and his counsel must draw upon whatever lessons and insights these tools may impart and attempt to translate them into a set of much more compact and cogent contentions that are more readily digestible by a human decision maker.[4]

---

that counsel has even taken the time needed to perform that task. *See*, *e.g.*, *United States v. Farris*, 171 F.4th 920, 923 (6th Cir. 2026) (sanctioning counsel and observing: "Among other things, [misuse of artificial intelligence] necessitated a significant use of judicial resources to investigate the suspected artificial-intelligence improprieties, coordinate a response, and facilitate additional steps of these appellate proceedings.").

[4] *See*, *e.g.*, *Picon-Diaz v. Bondi*, No. 25-9530, 2026 WL 412348, at *5 (10th Cir. Feb. 13, 2026) ("There is nothing inherently problematic with the use of artificial intelligence in the practice of law, but its careless use can waste both judicial resources and the opposing party's time and money, and it can damage the credibility of the legal system.").

Finally, I agree with the Government that the Defendant's Motion for New Trial, even if revised in suitable fashion, will not be an occasion to further delay his sentencing. That is especially appropriate here where there has been a considerable delay in sentencing not only the moving Defendant but also the other defendants in this case, the Defendant has presented seriatim motions for new trial, the latest motion comes nowhere close to fitting within reasonable page constraints, and the filing anticipates an evidentiary hearing.

The Defendants' Motion for Leave is DENIED.

SO ORDERED.

Dated this 11th day of September, 2026

/s/ Lance E. Walker
Chief U.S. District Judge